IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KATHLEEN O'BRENNAN,            )
                               )
           Plaintiff           )
                               )
vs.                            )   CASE NO. CV02-HGD-1333-S
                               )
COMSYS INFORMATION TECHNOLOGY  )
SERVICES,                      )
                               )
           Defendant           )

## MEMORANDUM OPINION

The above-entitled civil action is before the court on the motion for summary judgment filed by defendant Comsys Information Technology Services (Comsys) [Doc. #26].[1] This matter is before the undersigned United States Magistrate Judge based upon the consent of the parties pursuant to 28 U.S.C. § 636(c)(1) and Rule 73, Fed.R.Civ.P. The issues addressed in the summary judgment motion have been briefed, and the parties have provided the court with relevant evidentiary submissions.

In her complaint, Kathleen O'Brennan alleged that Diversified Computer Systems, Inc. (DCS), Matrix Resources, Inc. (Matrix), and Comsys discriminated against her based on her sex by making demeaning comments, placing blame on her for any problems, and discharging her for non-legitimate reasons after which her job was taken over by a male.

---

[1] Also named as defendants were Diversified Computer Systems, Inc., and Matrix Resources, Inc. These parties later were dismissed from the lawsuit, leaving Comsys Information Technology Services as the sole remaining defendant.

[Doc. #1, Count I]. She also alleged that these same defendants terminated her for non-legitimate reasons immediately after her complaints about gender discrimination. [*Id.*, Count II]. Finally, she alleged also that Matrix and Comsys interfered with her contract with DCS by discharging her or causing her discharge which caused the breach of a valid contractual relationship. [*Id.*, Count III].

During the briefing process, O'Brennan stated that she "does not oppose defendant's summary judgment motion on her tortious interference claim." [Doc. #35, Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, at 17]. Thus, her remaining claims are that her termination was the result of sex discrimination and retaliation in violation of Title VII.

Unlike most Title VII summary judgment motions, Comsys does not claim that plaintiff has failed to make out a *prima facie* case of discrimination under the framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Instead, defendant asserts:

> As a matter of law, O'Brennan's Title VII claims fail because O'Brennan has failed to present substantial evidence that she was an "employee" of Comsys and the facts reveal she was an "independent contractor," which precludes Title VII liability against Comsys.

[Doc. #32, Brief in Support of Comsys Information Technology Services Motion for Summary Judgment, at 3].

## FACTUAL BACKGROUND

In 2000, BellSouth was involved in a project known as the PMAP project. This project was developed to allow various government agencies to track BellSouth's service for local telephone carriers to enable them to determine if BellSouth should be allowed to enter the long distance telephone market. [O'Brennan Depo. at 66-67].

It is undisputed that plaintiff is a highly skilled computer software developer with a specialized knowledge of a computer migration tool known as DataStage. This program was being utilized in the PMAP project. In July 2000, BellSouth was utilizing DCS to provide it with consultants to work on the PMAP project. On July 19, 2000, O'Brennan signed a document entitled "Independent Services Contractor Agreement" wherein she contracted with DCS to provide her expertise to assist BellSouth on the PMAP project. [Doc. #31, Exh. 2, Independent Services Contractor Agreement]. This contract provided an hourly wage which plaintiff would be paid and stated that she initially would report to David Nickell while working with Mike Nason and Allen Williams. [*Id.*]. Matrix subsequently took over as the in-place contractor for BellSouth. Shortly thereafter, O'Brennan entered into a second agreement with DCS entitled "Contractor Agreement" wherein she was subcontracted to work for Matrix on the BellSouth PMAP project. [Doc. #31, Exh. 3, Contractor Agreement].

The overall lead for software development on the PMAP project was BellSouth employee Mitch Elmore. [Elmore Depo. at 10, 21]. Elmore was in charge of this project and had the power to hire and fire personnel. [O'Brennan Depo. at 117, 164-66].

Plaintiff's job assignments initially came from Dave Nickell. [*Id.* at 150]. Subsequently, Nickell was promoted to another position and Tony Ripley, a Comsys employee, was designated by BellSouth as the project manager. He made plaintiff's assignments thereafter. [*Id.* at 109]. Mike Nason was a DCS employee who was the Lead Developer or the Technical Lead in the area where plaintiff worked, known as "provisioning." [*Id.* at 110-11]. According to O'Brennan, Nason was very difficult to work with and was someone who had to be "in charge." [*Id.* at 111].

According to O'Brennan, two days before she was terminated, she was present at the job site when Mike Nason began yelling at Srilatha, a female employee, reducing her to tears. Upon seeing this, O'Brennan states that she told fellow employee Rick Ward that she thought it was appalling that Nason was allowed to treat women the way he did, that it was obvious that he discriminates against women and that she was "this far" from filing a law suit against him for sexual discrimination and against the program manager, Tony Ripley, for promoting Nason to Technical Lead. [*Id.* at 233-38]. According to O'Brennan, Ripley overheard this conversation, took issue with her statements and accused her of "poisoning the well." [*Id.* at 236].

4

Plaintiff was terminated two days later. [*Id.* at 110]. She was advised of her termination by Joe Perez, a Matrix employee who told her that Bobby Stroud and Jim Owing (DCS President) were responsible for her termination. [*Id.* at 107, 114-15]. Perez told plaintiff she was terminated because she could not keep up with the new technology. [*Id.* at 107, 231]. However, it later came to light that she was terminated based on Ripley's recommendation. Mitch Elmore testified that he made the decision to fire plaintiff because the team lead (Ripley) had said that her work was not satisfactory. [Elmore Depo. at 10-11, 20-21]. Elmore stated that, upon making this decision, he contacted plaintiff's vendor, Matrix, to let them know that she was to be taken off the project. [*Id.* at 11].

## PLAINTIFF'S CONTRACTS

With regard to her duties, plaintiff's first contract with DCS provided that "[c]lient's [BellSouth] program manager shall make specific assignments to DCS as the work progresses. Client shall dictate work sequences, schedules, and locations." [Doc. #31, Exh. 2, Independent Services Contractor Agreement]. The contract further noted that this agreement could be terminated by either party by written notice of either party. [*Id.*]. The second contract provided that "[t]he BellSouth Telecommunications program manager shall make specific assignments, dictate work sequences, schedules and locations." [Doc. #31, Exh. 3, Contractor Agreement.]. This contract was also terminable by written notice.

The second contract also provided that "[i]t is the intention of Contractor and DCS that Contractor be an independent contractor, not an employee of DCS . . . " and that "[c]ontractor understands and agrees that it is a common law employee of DCS . . . " [*Id.*]. In addition, it also states:

> Any worker's compensation contribution or payment levied by any foreign, federal, state or local law based upon proof of employment by Contractor shall be borne and paid by, and shall be the exclusive responsibility of, Contractor. Contractor and Contractor's employees shall receive no vacation or holiday pay from the Company, and shall not participate in plans or other benefits enjoyed by DCS employees.

[*Id.*].

Plaintiff acknowledges that the PMAP program was run by BellSouth and that she used BellSouth equipment to perform her job. She never requested equipment from Comsys. [O'Brennan Depo. at 158-59]. The computer she utilized, her telephone, access cards, and office furniture were all supplied by BellSouth. [*Id.* at 290-91].

O'Brennan's paycheck came from DCS, not Comsys [*id.* at 184], and she was responsible for her own social security withholding and tax obligations. [*Id.* at 185]. However, she was not provided with any DCS employee benefits and had no eligibility to participate in any retirement programs. [*Id.* at 151]. Her time sheets were not approved by Comsys. BellSouth signed off on them and 15 to 30 days later she would receive a check from DCS. [*Id.* at 117, 272-73]. Although plaintiff gave her time sheets to Mike Nason to send to BellSouth, plaintiff states that she did not "report to anybody." [*Id.* at 287].

## STANDARD OF REVIEW

This matter is considered by the court pursuant to the provisions of Rule 56, Fed.R.Civ.P. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact

when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his or her favor. *Id.* at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970). However, "[a] court need not permit a case to go to a jury when the inferences that are drawn from the evidence and upon which the non-movant relies are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Matsushita*, 475 U.S. at 592, 106 S.Ct. at 1359. It is, therefore, under this standard that the court must determine whether the plaintiff can meet her burden of coming forward with sufficient evidence as to each material element of her claim sufficient to permit a reasonable jury to find in her favor.

## ANALYSIS

The parties concede that Title VII only applies to employees, not independent contractors. *See* 42 U.S.C. § 2000e(b) (1994); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991). To determine whether a party is an employee or an independent contractor,

several factors must be considered, including whether the organization can hire or fire the individual or set the rules and regulations of the individual's work; whether and, if so, to what extent the organization supervises the individual's work; whether the individual reports to someone higher in the organization; whether and, if so, to what extent the individual is able to influence the organization; whether the parties intended that the individual be an employee, as expressed in written agreements or contracts; and whether the individual shares in the profits, losses, and liabilities of the organization. *Clackamas Gastroenterology Assoc. v. Wells*, 538 U.S. 440, 450, 123 S.Ct. 1673, 1680, 155 L.Ed.2d 615 (2003).

Plaintiff argues that, under the holding in *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488 (11th Cir. 1993), there is an issue of material fact as to whether plaintiff was an "employee" or an "independent contractor." In *Daughtrey*, the plaintiff, a former Honeywell employee and an experienced computer programmer, entered into a contract with Honeywell which specifically designated that she was not an employee and was not entitled to any of the benefits or privileges of an employee. The consulting contract itself stated that the plaintiff was an independent contractor. The defendant contracted with a third party to pay the plaintiff and other consultants for work performed on a contract for Graybar Electric Company. The district court held that the plaintiff was not an employee.

The Eleventh Circuit reversed on this issue, noting that there was evidence that indicated plaintiff was an employee, creating an issue of material fact. It noted, for instance, that the plaintiff was supplied the materials needed to perform her job by the defendant, that

9

she was required to work on the defendant's premises, that she did not hold herself out as providing computer programming services to others, that the contract could be terminated at will, and that the plaintiff provided the services personally. *Id.* at 1492-93.

O'Brennan asserts that she has presented sufficient evidence to survive summary judgment on this issue. She bases this on her claim that the evidence reflects that project manager Tony Ripley had substantial control over the means and manner of how she performed her job. She concedes that Ripley did not have the computer knowledge to make work assignments. [O'Brennan Depo. at 206, 224-26]. However, she alleges that he exercised this control by promoting developer Mike Nason, who did have this knowledge, to assist him in making these assignments. She alleges that Nason not only gave her assignments to perform on the project but, on occasion, told her how to write the code "line-by-line." [*Id.* at 201].

There are several deficiencies in this reasoning. Unlike Honeywell in the suit brought by Daughtrey, Comsys did not hire plaintiff as an independent contractor *or* as an employee. She was hired by DCS to perform work on a project that was managed and paid for by BellSouth. Furthermore, while Daughtrey's services to Graybar inured to the financial benefit of Honeywell, Comsys was entitled to receive nothing, and did not receive anything, of value for plaintiff's services to BellSouth. Her services were only of value to DCS (and later, to Matrix) which contracted with BellSouth to provide her services.

Furthermore, it is conceded by all parties that the PMAP project was a team project. It required that a number of independent contractors work together in order for the project to succeed. In that regard, plaintiff's contract sets out that BellSouth's designated program manager would control the work sequence, schedules, and location. Thus, she agreed in her contract that her work would be directed by a person designated by BellSouth. Ripley merely delegated tasks and set schedules as was required by BellSouth. According to O'Brennan, Ripley's "first priority was to meet the deadlines that were set on him" by BellSouth. [*Id.* at 213]. By plaintiff's own admission, while Ripley designated Nason as technical lead of the project, she "didn't report to anybody" and Nason assumed authority over plaintiff on his own. [*Id.* at 287-88]. Nason was a DCS/Matrix employee, not a Comsys employee.

BellSouth designated the Team Leaders, not Comsys. Team leaders such as Ripley were frequently, but not always, consulted by BellSouth in personnel matters. [Ripley Depo. at 71-78]. The fact that Ripley reported to BellSouth that O'Brennan was not working out is irrelevant. Any of the contract workers could have done the same. The bottom line is that BellSouth, not Comsys, had the final approval when personnel were hired and fired. When the decision was made to terminate plaintiff, Mitch Elmore, a BellSouth employee, told her vendor, Matrix, to remove her from the project, not Comsys.

As noted above, Comsys had no contract with O'Brennan and also did not pay her, provide benefits, withhold taxes, or set the terms and conditions of her employment. O'Brennan provided services for BellSouth on BellSouth property, with materials provided

by BellSouth. BellSouth approved her time sheets and paid her wages to DCS, not Comsys. It was BellSouth who designated Ripley as O'Brennan's team leader and gave him the authority to make assignments to see that the project was completed in an appropriate and timely manner. [O'Brennan Depo. at 150, 284, 288]. In short, plaintiff has no evidence to support her claim that she was an employee of Comsys. Application of the factors in *Daughtrey, supra*, makes a stronger case for "employer" status for DCS, Matrix, or BellSouth than for Comsys. Evidence that plaintiff is an employee of Comsys for purposes of pursuing a cause of action under Title VII is almost non-existent and creates no genuine issue of material fact on that claim. Accordingly, defendant's motion for summary judgment is due to be granted and this action dismissed with prejudice. A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 14th day of May, 2004.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE